Irving A. Gross and Rosetta M. Gross v. Commissioner.
Gross v. Commissioner
Docket No. 6319-69.
United States Tax Court
T.C. Memo 1972-221; 1972 Tax Ct. Memo LEXIS 34; 31 T.C.M. (CCH) 1098; T.C.M. (RIA) 72221; October 26, 1972, Filed Tried in New York, New York. Gabriel T. Pap, 51 E. 67th, New York, N. Y., for the petitioners. Michael A. Menillo, for the respondent. STERRETT
Memorandum Findings of Fact and Opinion STERRETT, Judge: The Commissioner determined a deficiency in petitioners' Federal income tax for the calendar year 1966 in the amount of $2,220.87. Concessions have been made, leaving the following *37 issues for our determination: 1099 1. Whether the basis for computing a loss pursuant to section 165(a), Internal Revenue Code of 1954, [1] on an automobile converted from personal to business use should be its original cost of $2,420.00 or its fair market value of $1,325.00 on the date of conversion. 2. Whether petitioner Irving A. Gross is entitled during 1966 to depreciation under the provisions of section 167(a), additional first year depreciation under section 179(a), and an investment credit authorized by section 38(a), for an automobile purchased on December 31, 1966, to be used both personally and in business, but which did not receive its first business use until January 5, 1967. 3. Whether petitioner Irving A. Gross may deduct the cost of pursuing a Ph. D. in American Civilization as an ordinary and necessary business expense within the meaning of section 162(a). Findings of Fact Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this *38 reference. The petitioners, Irving A. and Rosetta M. Gross, are husband and wife residing at the time of the filing of their petition herein at Plainview, New York. The petitioners filed their joint Federal income tax return for the calendar year 1966 with the district director of internal revenue at New York, New York. Rosetta is a party to this proceeding solely by virtue of having filed a joint income tax return and we will hereinafter refer to Irving A. Gross as petitioner. During 1966, petitioner was employed by Metromedia, Inc. as an outside salesman of television advertising time. His earnings were based entirely on commissions from his successful sales efforts. Petitioner purchased a Renault automobile in 1963 at a cost of $2,420.00. Though bought originally for personal use, the vehicle was converted to business use in 1965 when it had a fair market value of $1,325.00 Depreciation allowed on the Renault during 1965 amounted to $466.40. [2] By 1966 the car was abandoned as a total loss. Petitioner subtracted the allowed depreciation from his original cost and deducted the remainder $1,953.60 as a business loss on his 1966 Federal income tax return. *39 On December 31, 1966, petitioner purchased a Lincoln Continental automobile at a price of $6,217.60. The vehicle was bought for both business and personal use. The first actual business use did not occur until January 5, 1967. Petitioner received a B.A. in Journalism from Indiana University in 1955. At the time he secured his job as a salesman of television advertising time, he met at least minimum standards of education required by his employer, Metromedia, Inc. Petitioner embarked on a part-time course of study at New York University leading to a Ph.D. in American Civilization. This education was not required as a condition of employment. During the calendar year 1966, petitioner took courses entitled: American Colonies U.S. From Wilson to Roosevelt, 1913-33 Social and Intellectual History of the U.S. Main Factors in American Civilization Government and Mass Communications Of these, only "Government and Mass Communications" directly discussed the television industry. Petitioner's primary purpose in taking these courses was to receive the degree. Armed with an advanced degree, petitioner felt he would have more knowledge of his industry and his clients would value his opinions *40 more highly. Moreover, he would maintain his position as a "unique" salesman. Petitioner indicated on his 1966 tax return that it was not customary for other members of his profession to undertake similar education. He could have enrolled in the course "Government and Mass Communications" without pursuing a degree or taking other courses. Opinion The first issue for our determination is whether the proper basis for computing a loss on abandonment of an automobile converted from personal to business use should be its original cost of $2,420.00 or its fair market value of $1,325.00 at the time of conversion. Section 165(b) indicates that the basis for determining a loss under the provisions of section 165(a) is controlled by section 1011. [3] Section 1011 refers to section 1012 1100 which states that "The basis of property shall be the cost of such property, except as otherwise provided in this subchapter * * *." The *41 Renault was used solely for personal reasons between 1963 and 1965. Depreciation or losses on personal property are not allowable. See section 262. Upon conversion from personal to business use, if the fair market value is less than the original cost, the fair market value more properly reflects the business "cost of such property." Heiner v. Tindle, 276 U.S. 582 (1928); cf. Lawrence Y.S. Au, 40 T.C. 264 (1963), aff'd per curiam 330 F. 2d 1008 (1964); Section 1.167(g)-1, Income Tax Regs. To hold otherwise would permit petitioner through conversion to recognize losses which were realized during the period of personal use, specifically 1963 through 1965. We therefore hold that respondent properly determined the Renault's cost for business purposes was its fair market value of $1,325.00 on the date the vehicle was converted from personal to business use. Turning to the second issue, we must decide whether petitioner, during 1966, is entitled to depreciation under section 167(a), additional first year depreciation under section 179(a), and an investment credit under section 38(a) on an automobile purchased on December 31, 1966 for both personal *42 and business reasons, but which did not receive its first business use until January 5, 1967. Section 167(a)(1) provides as a deduction a reasonable allowance for depreciation of property used in a trade or business.[4] On the other hand, section 262 disallows any deduction for "personal, living or family expenses" not expressly provided in the Internal Revenue Code. Where substantial business and personal motives exist in owning property, allocation becomes necessary. International Artists, Ltd., 55 T.C. 94 (1970); Clarence J. Sapp, 36 T.C. 852 (1961), aff'd per curiam 309 F. 2d 143 (C.A. 5, 1962); William L. Heuer, Jr., 32 T.C. 947 (1959), aff'd per curiam 283 F. 2d 865 (C.A. 5, With automobiles, the allocation is based generally on a comparison of the business mileage with the personal mileage. Clarence J. Sapp, supra; William L. Hewer, Jr., supra.
*43 It has been stipulated that the first business use did not occur until January 5, 1967. Particularly because an automobile can be used in a variety of business and personal ways, it could not be foretold with certainty until 1967 whether petitioner's automobile would serve any business purpose and if it did, to what extent. For this reason, it seems appropriate to refuse to allow any part of the depreciation to be allocated to business use in the year 1966 under the provisions of section 167(a). Furthermore, the additional first year depreciation authorized by section 179(a) and the investment credit of section 38(a) are dependent on an allowance for depreciation under section 167(a). Section 179(a) states: (a) General Rule. - In the case of section 179 property, the term "reasonable allowance" as used in section 167(a) may, at the election of the taxpayer, include an allowance for the first taxable year for which a deduction is allowable under section 167 to the taxpayer with respect to such property, of 20 percent of the cost of such property. [Emphasis supplied] Section 48(a), in describing section 38 property, which is subject to the investment credit, provides: *44 * * * Such term includes only property with respect to which depreciation (or amortization in lieu of depreciation) is allowable and having a useful life (determined as of the time such property is placed in service) of 4 years or more. [Emphasis supplied] [5]
We have concluded that depreciation is not allowable for 1966. Accordingly, petitioner is not entitled to additional first year depreciation or an investment credit on his 1101 Lincoln Continental for the calendar year 1966. The last issue we are presented with is whether petitioner may deduct the expenses incurred in pursuing a Ph. D. in American Civilization as "ordinary and necessary" business expenses within the purview of section *45 162(a). Because the Internal Revenue Code does not deal directly with education expenses, the Regulations take on added significance. Burke W. Bradley, Jr., 54 T.C. 216 (1970). Pursuant to Rev. Rul. 68-191, 1968-1 C.B., p. 67, petitioner has elected to rely on the new regulations, [6] which state: Sec. 1.162-5. Expenses for education. - (a) General rule. Expenditures made by an individual for education (including research undertaken as part of his educational program) which are not expenditures of a type described in paragraph (b) (2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education - (1) Maintains or improves skills required by the individual in his employment or other trade or business, or (2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation. The new regulations establish an objective test as to the *46 deductibility of education expenses, eliminating the need to delve into the taxpayer's "primary purpose." Ronald F. Weiszmann, 52 T.C. 1106 (1969). Since petitioner admitted at trial that his primary purpose was to receive a degree in American Civilization, we understand his choice of the new regulations for determining the outcome of this issue. Petitioner was not required as a condition of employment to further his education. Moreover, he has indicated that it is not customary for other members of his profession to undertake similar education. Therefore, petitioner must show that the education maintained or improved skills required by him as a salesman of advertising time. He bears the burden of proof. Rule 32, Tax Court Rules of Practice. There must be a direct and proximate relationship between the education expenses and his employment. Kornhauser v. United States, 276 U.S. 145 (1928); James A. Carroll, 51 T.C. 213 (1968), aff'd 418 F. 2d 91 (C.A. 7, 1969). After a careful analysis of the evidence, it is our conclusion that the education expenses of petitioner are not deductible. We have no doubt that these courses, and eventually *47 the degree in American Civilization will improve his general knowledge and background, and indeed his competency as a salesman. See Carroll, supra.It will doubtlessly make him a more interesting and stimulating companion. But we are unable to perceive a direct link between "American Colonies", for example, and the sale of television air time. Cf. Louis Greenspon, 23 T.C. 138 (1954), aff'd on this issue 229 F. 2d 947 (C.A. 8, 1956). Of all the courses, only "Government and Mass Communications" appears to relate to the television industry. Petitioner failed to show the content of this or any other course he took during 1966. In the absence of such evidence, the title of the course alone does not afford sufficient grounds for finding a direct relationship between petitioner's studies and his employment. Even if we had such information with respect to the course's content, we would find it difficult to hold for the petitioner since we do not know with certainty the cost of this course alone. We therefore hold that petitioner is not entitled to deduct any part of his education expenses. To reflect concessions on unrelated issues. Decision will *48 be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
2. The amount of depreciation taken in 1965 is not in dispute in the present case.↩
3. As to individuals, section 165(a) is limited by 165(c). Petitioner used his automobile in his business, and therefore section 165(c)(1) is satisfied. Hereinafter we will refer only to section 165(a)↩ which is the operative provision in the instant case.
4. SEC. 167. DEPRECIATION. (a) General Rule. - There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence) - (1) of property used in the trade or business, * * *.↩
5. Section 46(a)(1) allows a credit equal to 7% of the "qualified investment." In defining a qualified investment section 46(c)(1) further restricts the investment credit to section 38 property "placed in service by the taxpayer during such taxable year." While we have concluded that petitioner's automobile does not qualify as section 38 property for 1966, we note that even if it did he would not be entitled to the investment credit since it had not been placed in service during 1966.↩
6. T.D. 6918↩, 1967-1 C.B., p. 36.